ONEIDA GENERAL TERM, January, 1849.    *Pratt, Gridley, and Allen,* Justices.

## CRAFTS *vs.* MOTT.

The claim of a surety against his principal, before payment of the debt by the former, is contingent, and is in terms provided for by the bankrupt act. On payment, by the surety, his claim becomes absolute. It is then a *debt,* and the relation of principal and surety no longer exists.

Such debt is provable under a commission of bankruptcy against the former principal, and will be barred by his certificate.

Where A. agrees with B. to pay and satisfy a bond and mortgage given by them jointly, payable in instalments at future periods, and to save B. harmless therefrom, the equitable relation between the parties is that of principal and surety. And the claim of B. against A., under the contract to indemnify, is, within the terms as well as the spirit and design of the bankrupt act, provable against the estate of A., as a contingent claim, to be allowed when it shall become absolute; and will be discharged by A.'s certificate in bankruptcy.

MOTION by the plaintiff to set aside the report of a referee. The action was debt on an agreement under seal, brought in this court to recover money paid by the plaintiff to the defendant. The declaration was in the ordinary form in debt on the contract, adding the money counts. The plea was the general issue of *nil debet* with a special plea to the whole declaration, setting up the defendant's discharge under the bankrupt act, on the 6th of July, 1843; his petition having been presented on the 27th of January, 1843. The plaintiff replied, admitting the discharge, but alleging that the cause of action accrued after the presentation of the defendant's petition in bankruptcy. The cause, by stipulation between the parties, was referred to Hiram Denio, Esq. of the city of Utica, to hear and determine and report thereon to this court. On the hearing before the referee the execution and delivery of the bond set forth in the declaration was admitted by the counsel for the defendant, and the same was read in evidence, and is in the words and figures following, viz.: " Whereas Willard Crafts and S. Germond Mott did, on the fourth day of March, 1836, purchase of Alexander B. Johnson of the city of Utica, thirteen lots lying in the city of Utica, on and near Steuben-street, for the sum of thir-

teen hundred dollars, and did on the same day give unto the said Johnson a bond and mortgage on said lots for the said sum of thirteen hundred dollars, to be paid in eight equal annual instalments, with interest annually on the whole sum. And whereas the said Willard Crafts has sold and conveyed to said Mott his equal undivided half of said lots, and the said Mott is to pay off and satisfy said mortgage and bond to said Johnson. Now therefore I the said Germond Mott do hereby covenant, promise and agree to and with said Crafts, that I will satisfy and discharge said bond and mortgage, and save said Crafts, his heirs and assigns, harmless from all damages, costs and charges which he may sustain on account of said bond and mortgage, and that I will indemnify him from all payments due or to grow due thereon, and from all the consequences that may accrue to him on account of said bond and mortgage. Given under my hand and seal, this 19th day of April, 1837.

S. GERMOND MOTT." [L. S.]

The plaintiff proved by Alexander B. Johnson, the person mentioned in the above bond, and to whom the bond and mortgage was given for the said thirteen lots, that Crafts, the plaintiff in this suit, had paid him various sums on said bond and mortgage, for principal and interest, at the times particularly stated by him ; some of the payments having been made before, and some after, the presentation of the defendant's petition. The plaintiff claimed to recover from the defendant the several sums of money paid by him, and interest thereon from the time he paid the money to Johnson ; and especially on all sums which he had paid since said Mott petitioned for the benefit of said act, on the ground that the discharge only operated upon such debts as the defendant owed at the time of presenting his petition, and that this debt, or that part of it which accrued to the plaintiff after the filing of the petition, was not discharged by the operation of the bankrupt act, because the plaintiff could not come in under the commission and prove his debt ; for the reason that he had not paid it. But the referee decided that the whole bond was discharged by the

---

Crafts *v.* Mott.

---

operation of the bankrupt act, and reported that there was nothing due the plaintiff.

*W. Crafts,* plaintiff, in person. A discharge under the bankrupt act only operates upon debts which existed at the time of presenting the petition. (2 *Denio,* 73. 6 *Hill,* 250, 254.) The plaintiff in this case does not belong to that class of creditors mentioned in the fifth section of the bankrupt act. There was no debt due the plaintiff until he paid the money for the defendant. He could not prove his debt, because he had none at that time. This is not a bond with a penalty. It is only an agreement to indemnify. The contingent or uncertain demands provided for in the act of congress, are those contingent demands which were in existence as such, and in such a condition that their value could be estimated at the time when the party was decreed to be a bankrupt. (*Ex parte Barker,* 9 *Ves.* 110. 17 *Id.* 503. *Taylor* v. *Young,* 3 *Barn. & Ald.* 521. *Woodard* v. *Herbert,* 24 *Maine Rep.* 358. *Cook's Bankrupt Law,* 141. 1 *John. Cas.* 73. *Lansing* v. *Prendergast,* 9 *John. R.* 127. *Smith* v. *Gordon,* 6 *Law Reporter,* 313, 317. *Boyd* v. *Vanderkemp,* 1 *Barb. Ch. Rep.* 274. *McMullen* v. *Bank of Penn.* 2 *Barr's Penn. Rep.* 343. *Roosevelt* v. *Marks,* 6 *John. Ch. Rep.* 266, 284. 1 *Cowp.* 525. *Taylor* v. *Mills,* 3 *Wilson,* 262. *Smith* v. *Gale,* 7 *T. R.* 360. 2 *Bos. & Pul.* 1. 2 *Black. Rep.* 794. *Stinemets* v. *Ainslie,* 4 *Denio,* 573.)

*Wm. Curtis Noyes,* for the defendant. I. The plaintiff, under the contract declared on, stood only in the relation of surety for the defendant as to the bond and mortgage; and as the defendant's liability on the bond and mortgage to Johnson was discharged under the bankrupt act, and this being the principal debt, and in fact provable in the proceedings in bankruptcy, the defendant could not be made liable for any subsequent payments by the plaintiff. The principal debt being discharged, all the incidents were discharged with it. Both the obligors to Johnson were originally bound for the whole

Crafts *v.* Mott.

debt; by the bankrupt proceedings and discharge the joint liability was severed—the plaintiff alone remaining liable; and any payments made by him afterwards were for his own debt, and on his account. If the debt, as to the principal creditor, was extinguished, as it clearly was, it is difficult to conceive how the defendant could be made liable, under the circumstances of the case. Besides, as to Johnson, he could have proved, and is presumed to have proved, his debt under the bankrupt proceedings, and to have received a dividend. II. The discharge was a complete bar to the plaintiff's claim for the instalments accruing subsequent to the presentation of the petition. Under the contract the claim was provable; the language of the bankrupt act being much broader than the old bankrupt act, and broader than any of the insolvent laws of this state, under which decisions have been had, which would seem favorable to the plaintiff's case. (*Bankrupt Act of August* 19, 1841, § 5, 1*st proviso*.) This very point has been considered by Vice Chancellor Sandford, (1 *Sandford's Ch. Rep.* 188,) in the case of *Morse* v. *Hovey*, in which he held that a claim like the present was barred by the bankrupt discharge; and his decision was affirmed on appeal to the chancellor (1 *Barb. Ch. Rep.* 406, *S. C.*) upon the same point. (*See also Haight* v. *Jackson*, 3 *Mees. & Welsb.* 598; *Jackson* v. *Magee*, 3 *Ad. & Ellis, N. S.* 48.) A late case in Vermont, (*Wells* v. *Mace*, 2 *Washburn's Vt. Rep.* 503,) has seemed to throw some doubt on this subject; but it is of no particular weight as an authority, and is reviewed and shown to be unsound, in the Law Reporter for December, 1848. (1 *Law Rep. N. S.* 377.) At any rate, the decisions in our own courts already referred to must prevail.

*By the Court*, ALLEN, J. Many of the earlier decisions of the English courts, some of which are relied upon by the plaintiff, are no longer authority as evidence of the law, either in England or in this country. In England the bankrupt acts were from time to time modified and amended so as to provide for many of the difficulties, and relieve from many of the

Crafts *v.* Mott.

hardships, suggested by these very decisions. And the late bankrupt act of the United States embraced most of the amendments and modifications of the English acts in relation to debts provable under the commission. By the act of 7 *Geo.* 1, debts due presently, but payable *in futuro*, were first made provable under a commission in bankruptcy; and this act was amended and its remedies extended by act of 49 *Geo.* 3. (*Eden's Bank. Law*, 125.) Prior to the act last cited the rights and remedies of persons who were security or " liable" for the bankrupt, were extremely limited. The right of such persons to prove their claims was limited to cases in which the surety was actually damnified before the bankruptcy, or when he had some counter security, as a bill, note, or bond, payable at a day certain. (*Eden's Bank. Law*, 149.) This act gave the surety, or *person liable*, the benefit of the principal creditor's proof; and secondly, if the principal had not proved, permitted such surety, or *person liable*, to prove under the commission, although he might have paid after a commission issued. (*Id.* 154.) The words " person liable," " were adopted for the convenient latitude of comprehending all those who could not strictly be considered as sureties, and yet might need the protection they were entitled to under those general words." (*Per Lord Eldon, Ex parte Yonge*, 3 *Ves. & B.* 31. *Ex parte Lobbow*, 17 *Ves.* 334.) These several modifications of the English bankrupt acts have rendered a large class of cases wholly useless as authorities as to what debts are or are not provable under a commission in bankruptcy, and accounts for an apparent conflict of authority in the reported cases.

By the late bankrupt act of the United states, section five, it was provided that " all creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, endorsers, bail, *or other persons having uncertain or contingent* demands, against such bankrupt shall be permitted to come in and prove such debts or claims under this act," &c.

There can be no doubt that if the plaintiff occupied the relation of a surety to the defendant in respect of the debt to

Crafts *v.* Mott.

Johnson, his claim was then barred by the certificate. Our act only differs from the English bankrupt acts upon this subject, in this respect, that by the latter, sureties and others having contingent claims cannot prove such claims until they shall have actually paid the same; while the United States bankrupt act gives the party the right to prove at once, reserving his right to have the same allowed until the claims shall have become absolute. (*Bankrupt Act,* § 5. 6 *Hill,* 583. *Eden's Bankrupt Law,* 150, 1.) The design of the bankrupt act, was to give the sureties the right to prove their claims against the estate of the bankrupt, and to give the bankrupt the benefit of his certificate of discharge as against all such claims; and effect cannot be given to this intent or to the language employed, unless sureties at the time of the bankruptcy are allowed to prove their claims at once and as contingent claims. The rights of the other creditors, and of the bankrupt, are abundantly protected by withholding the allowance until actual payment of the debt by the surety, or, in the words of the act, until the "debts and claims become absolute." This right of the surety to prove his contingent claim rendered it unnecessary to provide for giving him the benefit of the proof of the principal creditor, as provided by the English acts, and it was therefore omitted. The claim of a surety against the principal, before payment, is contingent, and is in terms provided for by the act. It becomes absolute on payment by the surety. It then becomes a *debt.* The relation of principal and surety no longer exists. The surety has become the creditor, and then no necessity exists for a special provision authorizing him to prove his debt. If, then, the plaintiff had been the surety for the defendant, his claim would have been barred by the certificate of discharge. (*Jackson* v. *Magee,* 3 *Ad. & Ellis, N. S.* 48. *Haight* v. *Jackson,* 3 *Mees. & Wels.* 598. *Morse* v. *Hovey,* 1 *Sandf. Ch. Rep.* 188. *S. C.* 1 *Barb. Ch. Rep.* 406.) *But* the benefit of the act is not confined to persons holding the technical and conventional relation of sureties, endorsers, or bail. The phrase "*other persons*," was used to reach all persons holding a similar, although not precisely and techni-

cally either of those relations, but who had claims of a similar character—that is, "*uncertain or contingent.*" The plaintiff had a claim which was uncertain, and whether it would ever become a debt due and payable to *him*, depended upon a contingency yet to happen. It was just as contingent, and no more so, than if he had been the surety in name and in fact, for the defendant, holding an agreement to indemnify him ; and the contingency was precisely of the same character. In truth the equitable relation between the parties was that of principal and surety. After the agreement between them upon which this action was brought, the debt to Johnson was the proper debt of the defendant ; and although the plaintiff remained liable to Johnson as a principal debtor, he was in equity, as between him and the defendant, a surety for the latter. In *Wood* v. *Dodgson,* (2 *Maule & Selw.* 195,) where, upon a dissolution of a partnership between three partners, two of the partners assigned to the third all their share in the partnership debts, property, &c. and took from him a covenant to pay the partnership debts and indemnify them, and the covenantee afterwards became bankrupt, after which the two were obliged to pay, it was held that by the covenant the covenantee became the principal debtor, and the other two were his sureties, and therefore, when they paid the debts, they paid in his discharge, and that their claim was consequently barred by the bankruptcy and certificate of the covenantor. (*See also Ex parte Taylor,* 2 *Rose,* 175 ; *Ex parte Ogeley,* 3 *Ves. & B.* 133.) *Butcher* v. *Forman,* (6 *Hill,* 583,) recognizes and adopts the principle decided in the above cases, and holds the doctrine that the technical and conventional relation of principal and surety need not exist to bring a case within the provisions of the act. The claim of the plaintiff was within the terms, as well as the spirit and design of the bankrupt act, provable against the estate of the defendant as a contingent claim, to be allowed when it should become absolute, and was therefore discharged by the certificate. The case of *Stinemets* v. *Ainslie,* (4 *Denio,* 573,) was an action upon a continuing covenant for

the payment of rents, and rests upon an entirely different principle. It does not affect the principle upon which we decide this case.

The motion to set aside the report of the referee is denied.

SAME TERM. *Before the same Justices.*