### In re DILLON.

(District Court, D. Massachusetts. March 27, 1900.)

#### No. 1,557.

1. BANKRUPTCY—PROVABLE CLAIMS—FIRM DEBT PAID BY RETIRING PARTNER.
   Where a partnership is dissolved by consent, one partner buying the assets and assuming all the debts and liabilities of the firm, from which he agrees to save the other harmless, the relation of the former partners becomes that of principal and surety; and if the retiring partner is compelled to pay a debt of the firm, after an adjudication in bankruptcy against the continuing partner, the former may prove the amount so paid as a claim against the latter's estate in bankruptcy, making such proof in the name of the creditor; or, if the creditor has already proved the debt, the partner paying it may have himself subrogated to the rights of such creditor.

2. SAME—SET-OFF—PRINCIPAL AND SURETY.
   It seems that a surety who pays the debt of his bankrupt principal, after the adjudication in bankruptcy, may set off the amount so paid against his own debt to the bankrupt.

In Bankruptcy. On review of decision of referee in bankruptcy.

Henry T. Richardson, for trustee in bankruptcy.
Charles R. Cummings, for creditors.

LOWELL, District Judge. McGuire, Wordell, and Dillon were partners. The partnership was dissolved by mutual consent. Dillon purchased the stock of the firm, and agreed in writing to assume all the firm debts, liabilities, and obligations, and to save McGuire and Wordell harmless from all loss, costs, and damages of any kind on account of said debts, liabilities, and obligations. None of the creditors of the old firm released the retiring partners. Subsequently Dillon was adjudicated bankrupt on his own petition. Both McGuire and Wordell were then severally indebted to him for goods sold after the dissolution of the partnership. Wordell and McGuire severally paid to Claflin & Co., a creditor of the partnership, sums.

slightly in excess of their several debts to Dillon, and for the sums so paid in excess of their debts to Dillon they now seek to prove against his estate.

In equity, the relation of McGuire to Dillon concerning the debts of the old firm was that of surety. By his contract with McGuire, Dillon made himself primarily responsible for the payment of the firm debts. As regards Claflin, McGuire remained primarily liable, together with Dillon; but, as regards Dillon, McGuire was only a · surety. That the relation between the two former partners is that of principal and surety is recognized in bankruptcy. Lindl. Partn. (6th Ed.) 453; Ex parte Young, 2 Rose, 40; Lowell, Bankr. §§ 173, 183; Fisher v. Tifft, 127 Mass. 313 (which must be regarded as greatly modifying Morton v. Richards, 13 Gray, 15); Crafts v. Mott, 4 N. Y. 603; Fernald v. Clark, 84 Me. 234, 24 Atl. 823. As to the bankrupt's estate, therefore, McGuire stands as a surety who has paid the debt of his bankrupt principal subsequently to the adjudication. At the time of adjudication the claim of McGuire against Dillon was but a contingent liability. As was said in Re Ells (D. C.) 98 Fed. 967, 969, there is difficulty in holding that the present bankrupt act allows the proof of contingent claims in general, but the contingent claims of sureties are especially provided for by section 57i, which reads as follows:

"Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor."

This provision differs in form from the corresponding provisions of the bankrupt act of 1867, §§ 19, 27, the material parts of which read as follows:

"Sec. 19. * * * Any person liable as bail, surety, guarantor, or otherwise for the bankrupt, who shall have paid the debt, or any part thereof, in discharge of the whole, shall be entitled to prove such debt or to stand in the place of the creditor if he shall have proved the same, although such payments shall have been made after the proceedings in bankruptcy were commenced. And any person so liable for the bankrupt, and who has not paid the whole of said debt, but is still liable for the same or any part thereof, may, if the creditor shall fail or omit to prove such debt, prove the same either in the name of the creditor or otherwise, as may be provided by the rules, and subject to such regulations and limitations as may be established by such rules."

"Sec. 27. * * * Provided, that any debt proved by any person liable, as bail, surety, guarantor, or otherwise, for the bankrupt, shall not be paid to the person so proving the same until satisfactory evidence shall be produced of the payment of such debt by such person so liable, and the share to which such debt would be entitled may be paid into court, or otherwise held for the benefit of the party entitled thereto, as the court may direct."

See, also, General Order 34, promulgated in 1874.

The provisions of the two acts, though quite differently worded, yet reach in most respects the same result. Under both acts the surety can get nothing by way of dividend unless he pays the original debt in whole or in part. If he discharges the whole debt, then, under the first clause above quoted of section 19 of the act of 1867,

and under section 57i of the act of 1898, he stands in the place of the original creditor, or is subrogated to his rights. This is true whether the payment is made before or after the bankruptcy. Plainly the words, "if he discharge such undertaking," in section 57i, are not limited to the time before adjudication. If the surety pays only a part of the original debt, then, by the express provisions of section 57i of the act of 1898, the surety is subrogated to the original creditor "to that extent." In some cases there may be difficulty in working out subrogation as to part payment, without prejudicing the rights of the original creditor, but the difficulty thus arising need not here be considered. See In re Heyman (D. C.) 95 Fed. 800, and cases cited. Under the act of 1867, it seems doubtful if the surety discharging only a part of the original debt, and leaving something still due upon it, was entitled to any dividend on account of his payment. In the case just cited it seems that the learned judge overlooked the phrase, "in discharge of the whole," following the words, "or any part thereof." Where the original creditor had not proved, the surety seeking to prove under the act of 1867 was required ordinarily to prove in the creditor's name, by general order 34. Under the act of 1898, this requirement is imposed by section 57i of the statute, with which General Order 21, cl. 4 (32 C. C. A. xxiii., 89 Fed. x.), substantially accords. It follows, therefore, that if Claflin had proved the original debt due him at the time of the bankruptcy, as he might ordinarily have done, then McGuire, on his subsequent payment of a part of Claflin's debt, would be subrogated to that extent to Claflin's rights. It follows, also, that, since Claflin has not proved the debt, McGuire must, if he wishes to prove, do so in Claflin's name. As he has not done this, his claim must be disallowed without reference to any question of set-off, and the referee's judgment is therefore affirmed. The court has not here to consider if McGuire, when sued by the trustee upon a debt due to the bankrupt estate, can set off against that debt the payment made to Claflin. In this case it is necessary only to determine if the proof here tendered by McGuire is sufficient. The appeal of Wordell is disposed of in like manner for the same reasons.

Here it may be that this opinion should conclude, but the question of McGuire's right of set-off was argued before me at considerable length, and was, indeed, almost the only question discussed at the argument. Without deciding that question, it may not be improper to suggest certain considerations bearing upon it, inasmuch as a determination of that question is apparently necessary to the decision of the real controversy between these parties. Although McGuire, if he seeks to prove against Dillon's estate, must prove in the name of Claflin, yet it does not follow that the payment made Claflin gives McGuire no right of set-off against his debt due to Dillon. It is laid down in text-books on bankruptcy, without regard to the provisions of particular statutes, that a surety paying the debt of his principal after bankruptcy may set off the amount so paid against his debt to the bankrupt. See Lowell, Bankr. § 282; Collins v. Jones, 10 Barn. & C. 777; Ex parte Barrett, 13 Wkly. Rep. 559; Marks v. Barker, Fed. Cas. No. 9,096. The language of the dif-

ferent statutes of bankruptcy doubtless differs, and the provision of section 68b of the act of 1898, that a set-off, to be allowed, must be provable against the estate, is not found in all bankrupt acts, and apparently was not the law under the act of 1800. See Marks v. Barker, above cited. The right of set-off, however, may not depend altogether upon the form required in proving the debt. A debt provable only in the name of A. may perhaps be availed of in set-off by B. To hold this would not contravene the language of the present act. The rule that a surety may generally set off a payment made on his principal's debt against his debt due to the principal does not seem to be based upon the technical form of proof, but upon broad principles applicable generally in bankruptcy. Under some circumstances, therefore, McGuire might perhaps, by way of set-off, avail himself of his payment of Claflin's debt. Here, however, the case is complicated by the fact that Claflin has received a preference, and so cannot prove. In such case, the set-off or counterclaim is not provable by anybody, and it may be difficult to establish that any debt, or any debt provable against the bankrupt's estate, has been by the act of the surety discharged in whole or in part or diminished pro tanto. The rule that a partner may not prove against the separate estate of his co-partner, in competition with the creditors of the partnership, appears to be inapplicable where, as here, the separate estate will, in any event, yield no surplus for the joint creditors. Lowell, Bankr. § 182. The above suggestions are made only for the convenience of counsel, who may desire to raise again the question, which cannot be determined upon the existing state of the record, and not as an expression of definite opinion on the part of the court.