## DAVIS *et al. versus* BURTON *et al.*

CERTIFICATE from *Nisi Prius*.

This was a bill by Amos Burton and Elizabeth his wife against Amelia Davis, George Williams, and Amos Ellis, executors and trustees, &c., of Benjamin Davis, deceased.

The bill sets forth that Benjamin Davis, March 8th 1853, conveyed to John Davy in fee a lot of ground on Thirteenth street, Philadelphia, reserving a yearly ground-rent of $72, payable in *lawful money*, with the proviso that upon the payment of $1200 and the arrearages of rent, the rent should cease and the grantor would release the ground-rent; that Elizabeth Burton, one of the defendants, now the owner of the lot, on the 1st day of July 1864, tendered to the defendant $1200, the arrearages of rent and costs of the release, in the lawful money of the United States, which were refused; and praying that the defendant might be required to release said ground-rent on payment of said $1200, &c.

The answer, admitting the allegations generally, avers that the complainants did not make the tender in *gold or silver money of the United States*, but offered to pay in the notes of the United States, called " *Greenbacks;*" deny their obligation to receive such money, and declare their willingness to execute a release of the ground-rent upon its payment in lawful gold or silver money of the United States.

The case was heard on bill and answer, it being admitted that the tender was made in the legal-tender notes issued under the Act of Congress of February 25th 1862.

Thompson, J., delivered the following opinion:

" The main question presented here was heard and decided by my brother Agnew, in Shollenberger v. Brinton, on demurrer to that bill. At present I will follow that ruling, reserving to myself entire freedom of thought and action on the main question, when it comes before this court, in that case and in this.

" That question regards the constitutionality of the legal-tender notes authorized by Congress to be issued by the treasury department of the United States, under the Act of 25th February 1862.

" A decree *pro formâ* in favour of the plaintiff in this bill is ordered to be entered, as this is in accordance with the decision alluded to, as made in the case of Shollenberger v. Brinton."

A decree was entered accordingly and the defendants appealed, assigning for error:

1. Entering a decree for the complainants.

2. Decreeing that the ground-rent was a debt within the meaning of the Act of Congress of February 25th 1862.

3. Decreeing that the tender of United States treasury notes to the defendants was a sufficient tender.

[Davis v. Burton.]

4. Deciding that the Act of Congress of February 25th 1862, was constitutional.

*Thorn*, for appellants.—Is a ground-rent such as this, a debt within the Act of Congress ? for the notes issued by virtue of it are made a legal tender for all debts except duties and interest. A *debt* is always a sum of money which, at some time or other, the person to whom it may be due or who is entitled to its payment, may recover by action if it is withheld, and the person by whom it is to be paid may, at some time or other, require to be taken by the creditor.

The principal of a ground-rent does not come within any meaning usually applied to " debt." The grantor cannot constrain the grantee to pay the money or buy the land. A *ground-rent* is real estate : *debts* are *personalty*.

In the Circuit Court of the United States, Judge Grier held that a ground-rent is not a debt which can be discharged by legal-tender notes : Reading Railroad *v.* Morrison. Judge Allison, in the Common Pleas of Philadelphia, held the same opinion : Patterson *v.* Blight.

Is the Act of Congress constitutional ? This question has not been decided by any court of superior jurisdiction ; but Judge Cadwalader, in Reading Railroad *v.* Morrison, in the Circuit Court of the United States, and Judge Sharswood in Borie *v.* Troth, in the District Court of Philadelphia, in able and elaborate opinions, held that the act is unconstitutional. These opinions are referred to as the argument on that question.

*John A. Burton*, for appellees.—1. Is a sum of money paid which extinguishes a ground-rent, the discharge of a debt against the grantee or the land ?

A ground-rent is a rent service ; an incorporeal inheritance in fee, and reserved out of the land to secure the performance of a collateral act : Ingersoll *v.* Sergeant, 1 Wh. 345 ; Bosler *v.* Kuhn, 8 W. & S. 183. As a fee, it has incidents belonging to realty ; as incorporeal ; it issues out of something corporeal ; as collateral security, it relates to something outside of itself. The *payment* is the collateral thing to be done. The estate of the ground-landlord is in the *right* both to the yearly rent and the principal ; which is reserved as security for the performance of the agreement in the deed. The agreement is " yielding and paying *therefor*," &c. Paying for what ? for the land conveyed. The price of the land is the principal sum fixed by the original contract for its purchase. He may elect to pay a yearly sum for ever or the gross sum agreed upon ; when he elects it becomes a debt ; it is due on a certain contract. The grantor has agreed that there may be an election, and that when made he

[Davis *v.* Burton.]

will receive the money. If the grantee owes nothing after an election, how can he compel the grantor to receive any money?

This is a bill for specific performance to compel the landlord to execute a release, which he agreed to do, not on tender of gold and silver, but of "lawful money," which means money lawful when the tender is made: 7 Bacon's Abridgment, *Tender*, B. 2, 325; United States *v.* Robertson, 5 Pet. 644. If lawful money be tendered, how can it affect the case whether a ground-rent be a debt or an estate?

2. Is the act constitutional? The Constitution granted to Congress implied powers with means to carry them into effect. Amongst these are power "to carry on war, maintain a navy, borrow money and regulate commerce," and in war, paper money is necessary as a means. The Constitution does not say what shall be a legal tender or who shall declare it, but they prohibit States from making anything but gold and silver a legal tender; as the States are prohibited, it must by necessary implication belong to the United States. If paper money as a legal tender be necessary, Congress can issue it. If the measure be appropriate to the end, the degree of necessity is exclusively for Congress: United States *v.* Fisher, 2 Cranch 358. The government must be enabled to draw on the resources of the nation to the extent of her emergencies, which can be done only through paper money. For a war, money is the prime necessity, and Congress was *bound* to raise it: United States *v.* Marigold, 9 How. 560.